Herbert **NANTY**, Plaintiff,

v.

The **BARROWS COMPANY** formerly
Barrows Furniture Company,
Defendant.

Civ. A. No. CIV 78–21 PHX CAM.

United States District Court,
D. Arizona.

Jan. 7, 1980.

Bendheim & Mote, Phoenix, Ariz., for plaintiff.

Evans, Kitchel & Jenckes, Phoenix, Ariz., for defendant.

## MEMORANDUM AND OPINION

WESLEY E. BROWN, Senior District Judge, Sitting by Designation.

In this action, which was tried to the Court, plaintiff alleges that defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, et seq., discriminating against him in its hiring practices because of his race (American Indian) by refusing to permit him to apply for a position as a driver at their warehouse, while at the same time accepting applications for employment from and hiring Caucasians for the same or similar positions.

Plaintiff seeks back pay, injunctive relief, an Order requiring defendant to implement an affirmative action program designed to eliminate the effect of discriminatory practices, an Order requiring the defendant to employ plaintiff as a truck driver, an Order retaining jurisdiction over this action to assure full compliance with the Orders of this Court and with Title VII of the Civil Rights Act of 1964, as amended, and an Order granting plaintiff reasonable attorneys fees, court costs and disbursements.

The parties have agreed to the existence of the following facts, as set out in the Pre-trial Order:

1. Herbert Nanty is an American citizen of American Indian ancestry.

2. Barrows Furniture Company is an employer under Title VII of the Civil Rights Act of 1964, as amended.

3. The Defendant does business in the State of Arizona and in this judicial district.

4. Curt Crawford, an employee of Defendant, was in charge of hiring drivers for Defendant during the period of the acts complained of.

5. At the time of the acts complained of, Defendant regularly employed drivers and handlers.

6. Defendant paid drivers a higher hourly wage than handlers.

7. From time to time Defendant notified the Job Bank of the Arizona Department of Economic Security that it was seeking to hire qualified employees.

8. During the months of August and September of 1973, Barrows hired nine drivers, all of whom were Anglo. During the same period of time it hired forty-six handlers; of these, thirty-one were Anglo, thirteen were Spanish surnamed Americans, and two were American Indians.

9. The Job Bank received and wrote up an order from Defendant for a driver on September 24, 1973.

10. Plaintiff received a referral from the Job Bank of the Arizona Employment Service with instructions to apply at Barrows on September 25, 1973. The Job Bank did not inform Barrows of the referral.

11. Defendant employed two Caucasians as drivers on September 28, 1973.

12. In addition to requiring basic skills possessed by drivers such as experience and possession of an appropriate chauffeur's license, Barrows requires that drivers be neat in appearance and reasonably articulate as they are called upon to deal with customers to whom they deliver furniture. Much furniture is delivered on a C.O.D. basis and drivers have the responsibility for receiving and handling sums of money, often in excess of $1,000, and, if necessary, answering questions and otherwise discussing the transaction with customers.

13. On Saturday, September 22, 1973, driver Kenneth Gowens worked his last day as a Barrows employee. The fact that he had quit his employment was not known to Barrows until Mr. Crawford received a note from Mr. Gowens from El Centro, California, on or after September, 25, 1973.

14. On September 25, 1973, driver Cyrus Will was terminated by Barrows.

15. The vacancies occasioned by the departure of Messrs. Gowens and Will were filled on September 28, 1973, when Barrows hired a Mr. Walker and a Mr. Bobinac as drivers, both Caucasian. Mr. Bobinac was almost immediately reassigned to the position of finisher.

The Court adopts the foregoing stipulations of the parties and incorporates them in its Findings of Fact.

The contentions of the parties, as expressed in the Pre-trial Order, are set forth below:

Plaintiff contends that after he received his referral from the Job Bank he went to Barrows Furniture Company on September 25, 1973, and asked to apply for a job as driver. Plaintiff was denied the opportunity to fill out an application for employment, and was told that the job had been filled. Defendant continued to seek drivers and hired two Caucasian drivers on September 28, 1973. Plaintiff contends further that he was qualified in all respects to apply for a job as a driver. Finally, it is alleged that

Defendant's refusal to permit Plaintiff to apply for a position as driver was based upon Plaintiff's race, and this was consistent with Defendant's policy of hiring members of minority groups only as handlers, a lower paying position, and hiring virtually no members of minorities as drivers.

Defendant denies the contentions of Plaintiff, and further contends that in any event Plaintiff was not suitably qualified to fill a driver position for Defendant.

## FINDINGS OF FACT

In addition to those facts stipulated to by the parties and set out hereinabove, the Court makes the following findings of fact:

Plaintiff was informed by a friend of a friend that there was a job as a truck driver open at Defendant's warehouse. He went to the warehouse three times to ask for the job. He did not see the person (Crawford) who was responsible for hiring at the warehouse. He was never interviewed and was not given an application to fill out.

In 1973, persons applying for a job as a truck driver with defendant went through a two-step process. First, the applicant was interviewed briefly to determine whether he met the job qualifications, which included, among other things, a well-groomed appearance and the ability to express oneself articulately. If the applicant was found qualified by the interviewer, and a position was open at that time, the applicant was given a written application form to complete. There was a wage freeze in 1973 and three-fourths of all applicants to the Defendant were not given applications to fill out.

■ The qualifications Defendant required of persons seeking a truck driver's job were legitimate, non-discriminatory and reasonably, related to Defendant's business. Plaintiff did not meet these qualifications. Plaintiff was not refused the opportunity to complete a written application or to be employed because of race.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the parties and the subject matter of this action.

■ The rules governing a prima facie showing and the burden of proof in a case of this type are set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 at 802, 93 S.Ct. 1817 at 1825, 36 L.Ed.2d 668 (1973):

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. * * * The burden must then shift to the employer to articulate some legitimate, non-discriminatory reason for the employee's rejection.

The plaintiff did not prove a case of discrimination. Plaintiff failed to show that he met the qualifications for a job for which Defendant was seeking applicants.

The qualifications for truck drivers articulated by the Defendant are not pretextual.

The following quotation from *Griggs v. Duke Power Co.*, 401 U.S. 424 at 430–431, 91 S.Ct. 849 at 853, 28 L.Ed.2d 158 (1971), applies with particular force to this case:

> Congress did not intend by Title VII . . to guarantee a job to every person regardless of qualifications. In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority group. Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed. What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification.

Defendant has not violated the provisions of Title VII of the Civil Rights Act of 1964,

and is therefore entitled to judgment. Plaintiff's prayer for relief is, in all respects, DENIED.

The Clerk will enter Judgment in favor of the Defendant and against the Plaintiff, with costs to be assessed against Plaintiff. No award of attorneys' fees to Defendant is made by the Court.

IT IS SO ORDERED.